# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

STEVEN E. HAKE, M.D.,

    Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,

    Defendant.

Case No. 2:09-CV-01563-KJD-GWF

**ORDER**

Before the Court is the Motion for Summary Judgment of Defendant Massachusetts Mutual Life Insurance Company (#40). Plaintiff Steven E. Hake, M.D. has responded (#45) and Defendant has replied (#47).

I. Background

    A. Plaintiff's Work History

Plaintiff is a licenced medical doctor. From 1996 until June 3, 2005, Plaintiff worked for Radiology Specialist, Ltd. ("RSL") as a radiologist providing radiology services to hospitals in Las

Vegas, Nevada. Ninety-four percent of Plaintiff's work consisted of Diagnostic Radiology, including reading x-rays, mammograms, ultrasounds, scans, and MRIs. Diagnostic Radiology does not require patient contact. Plaintiff also performed six percent of his work in Interventional and Non-Interventional Radiology, both of which require patient contact. Plaintiff's worked exclusively in hospitals.

For several years, Plaintiff suffered from various sinus and nasal pathologies. In 2004 Plaintiff discovered that he had been exposed to toxic mold which left him with damage to his sinuses and nasal cavities. This injury rendered him particularly vulnerable to airborne infectious agents. In May 2005, Plaintiff tested positive for a drug resistant bacteria called Methicillin Resistant Staphylococcus Aureus ("MRSA"). Plaintiff's treating physician advised him against further exposure to a hospital environment.

Plaintiff left the employment of RSL on June 3, 2005 because of his disability. On September 9, 2005, Plaintiff applied for privileges at Northeastern Nevada Regional Hospital ("NNRH") in conjunction with his employment with Great Basin Imaging. In the application process, Plaintiff was asked "Have you had or developed any mental or physical health problems that may affect your ability to practice or the quality of your practice?" Plaintiff responded "No." (#40 Exh. 2.) At NNRH, Plaintiff performed ninety-eight percent Diagnostic Radiology and two percent Interventional and Non-Interventional Radiology. He worked at NNRH for Great Basin Imaging until May 2006. Plaintiff is currently employed by West Valley Imaging, performing ninety-four percent Diagnostic Radiology and two percent Interventional and Non-Interventional Radiology.

B.  Plaintiff's Claim for Benefits

On December 19, 1995, Defendant issued a disability income insurance policy (the "Policy") to Plaintiff. When the conditions of the Policy are met, the Policy pays benefits to the insured based on the percentage loss of income that the insured suffers each month due to disability. Concurrent with the Policy, Plaintiff purchased a Regular Occupation Rider (the "Rider"). This Rider provides

that, if the insured is totally disabled from the insured's regular occupation, income loss will be presumed to be 100% and benefits will be paid accordingly.

The relevant provisions of the Policy are:

**Disability**
Disability, as used in this policy, is an incapacity of the Insured that:
1. Begins while this policy is in force; and
2. Is due to Injury or Sickness; and
3. Begins when, and continues while, the Insured is receiving timely and appropriate care by or at the direction of a legally qualified physician, unless we are furnished with proof, satisfactory to us, that future care would be of no use; and
4. Reduces the Insured's ability to work; and
5. Causes a Loss of Earned Income, as discussed in this part

**Loss of Earned Income**
The payments we make for disability are measured by the Loss of Earned Income. For each moth of disability, we determine the amount of the Monthly Average the Insured is prevented from earning because of that disability. This is the Loss of Earned Income for that month. There are, however, two limits. First the amount of loss must be at least 20% of the Monthly Average. If it is not, there is no Loss of Earned Income for the purpose of this policy. Second, if the amount of loss is more than 75% of the Monthly Average, then the Loss of Earned Income is considered to be 100%.

The Rider defines the relevant terms as follows:

**Regular Occupation**
Regular Occupation means the occupation in which the Insured was regularly engaged just before the date disability began.

**Presumed 100% Loss of Earned Income**
We consider the Insured to have a 100% Loss of Earned Income for each month the Insured is unable to perform the substantial and material duties of the Regular Occupation because of disability.

In or about June 2005, after Plaintiff left RSL, he submitted a claim for benefits to Defendant indicating that he could no longer work as a radiologist. (#40 Exh. 2). However, Plaintiff immediately took a position at another hospital doing essentially the same duties. Because Plaintiff continued to work in his regular occupation as a radiologist, Defendant believed that payments were only due pursuant to the Policy's lost income provisions, and not the regular occupation provisions of the Rider. Defendant paid percentage benefits for Loss of Earned Income pursuant to the Policy.

1   Plaintiff initiated the instant suit, claiming that Defendant owes him benefits for 100% Loss
2   of Earned Income pursuant to the Rider.  Specifically, Plaintiff claims that he is eligible for benefits
3   pursuant to the Rider because his disability prevents him from maintaining his employment with
4   RSL as a radiologist in a hospital in Las Vegas, Nevada.  Defendant claims that the Plaintiff's
5   disability does not prevent him from performing "the substantial and material duties of Plaintiff's
6   Regular Occupation" as defined in the Rider.

II.  Analysis

A. Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without

4

1 more, will not create a "genuine issue" of material fact precluding summary judgment. <u>Villiarimo v.
2 Aloha Island Air Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002).

3     Summary judgment shall be entered "against a party who fails to make a showing sufficient
4 to establish the existence of an element essential to that party's case, and on which that party will
5 bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment shall not be granted
6 if a reasonable jury could return a verdict for the nonmoving party. See <u>Anderson</u>, 477 U.S. at 248.

7     B. Contract Interpretation

8     This Court's jurisdiction is based on diversity of citizenship. Accordingly, Nevada's
9 substantive law governs. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188
10 (1938); <u>Nitco Holding Corp. v. Boujikian</u>, 491 F.3d 1086, 1089 (9th Cir.2007). In Nevada, "[a]n
11 insurance policy is a contract that must be enforced according to its terms to accomplish the intent of
12 the parties." <u>Farmers Ins. Exch. v. Neal</u>, 119 Nev. 62, 64 P.3d 472, 473 (2003). Where, as here, the
13 facts are not in dispute, contract interpretation is a question of law. <u>Grand Hotel Gift Shop v. Granite
14 State Ins. Co.</u>, 108 Nev. 811, 839 P.2d 599, 602 (1992). The language of the insurance Policy and
15 Rider must be viewed "from the perspective of one not trained in law," and we must "give plain and
16 ordinary meaning to the terms." <u>Farmers Ins. Exch.</u>, 64 P.3d at 473 (internal quotation marks
17 omitted). "Unambiguous provisions will not be rewritten; however, ambiguities are to be resolved in
18 favor of the insured." <u>Id</u>. (footnote omitted); see also <u>Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.</u>,
19 184 P.3d 390, 392 (Nev.2008) ("In the insurance context, we broadly interpret clauses providing
20 coverage, to afford the insured the greatest possible coverage; correspondingly, clauses excluding
21 coverage are interpreted narrowly against the insurer.") (internal quotation marks omitted); <u>Capitol
22 Indemnity Corp. v. Wright</u>, 341 F.Supp.2d 1152, 1156 (D.Nev.2004) (noting that "a Nevada court
23 will not increase an obligation to the insured where such was intentionally and unambiguously
24 limited by the parties").

25     Plaintiff contends that, under the terms of the Rider, he is totally disabled from his regular
26 occupation because he cannot work for RSL. Specifically, Plaintiff argues that "Dr. Hake's own

occupation was the *precise practice he enjoyed with his employer,* not another position no matter how similar, somewhere on this continent." (#45 at 10:24-26, emphasis original.) Further, Plaintiff states that the Rider "insures Dr. Hake from the inability to perform his regular job." (Id. at 6:25-26.) According to Plaintiff, even working as a radiologist, performing the same duties at another hospital—which Plaintiff did—would trigger the Rider's 100% Loss of Earned Income provision.

  The plain and ordinary meaning of the terms of the Policy and Rider do not support this interpretation.  Despite Plaintiff's characterizations, the Rider uses the term "Regular Occupation" and not "job."  It is well settled that "occupation is a general term" and a policy insuring an against disability from a person's occupation "does not require disability from a particular job's or employer's requirements."  Ehrensaft v. Dimension Works Inc. Long Term Disability Plan, 120 F.Supp.2d 1253, 1259 (D.Nev. 2000).  Plaintiff cites a number of cases which purportedly say that "occupation" means what he would have it mean: "job" or "precise practice he enjoyed with his employer" in a specific place.  None of the cases he cites says any such thing.  Instead, the cases define occupation as a vocation and focus on the job descriptions and duties the insured preformed prior to the disability.  See e.g. Dionida v. Reliance Standard Life Ins. Co., 50 F. Supp.2d 934 (N.D. Cal. 1999) (regular occupation means position of same general character with similar duties); Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828 (1997) (inability to crawl and walk through yachts constituted inability to perform insured's regular vocation as yacht salesman rather than salesman generally); Oglesby v. Penn Mutual Life Ins. Co., 877 F.Supp. 872 (D. Del., 1994) (radiologist unable to wear lead vest required to perform the types of procedures constituting 80 to 100% of his pre-disability practice could not perform his regular occupation).  The other cases cited by Plaintiff are similarly distinguishable.

  The Rider language itself provides further clarification.  This documents states that the Defendant will only pay the benefit for 100% Loss of Earned Income when "the Insured is unable to perform the **substantial and material duties** of the Regular Occupation because of disability." (emphasis added.)  No one takes issue with the fact that Plaintiff's duties are unchanged from his

pre-disability employment. At RSL he performed ninety-four percent Diagnostic Radiology and six percent Interventional and Non-Interventional Radiology. Plaintiff's current practice consists of ninety-four percent Diagnostic Radiology and two percent Interventional and Non-Interventional Radiology. Whatever the differences in the two positions may be, there is plainly no difference in Plaintiff's substantial and material duties. As a matter of law, Plaintiff has not suffered a 100% Loss of Earned Income under the unambiguous and ordinary terms of the Rider and accordingly, this Court grants summary judgment in favor of the Defendant.

III.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (#40) is **GRANTED.**

DATED this 8th day of August 2011.

_____
Kent J. Dawson
United States District Judge